so good morning your honors may it please the court christy hughes on behalf of miss washington um i'll i'd like to reserve three minutes for rebuttal and i'll keep my eye on the clock all right thank you the government used agent landau's testimony to present a profile of a female sex trafficker and then argued that miss washington was guilty because her behavior and characteristics lined up with the law enforcement profile that agent landau had outlined and what's hold on a second the first part of your your statement i i understood i understand based on my reading but did they really argue that because the testimony of the expert corresponded with the conduct that she was guilty did they make that argument well two responses your honor number one i don't think they had to i think under louis that when that's the implication that's not my question my question is did they do these so they did do that and i i didn't i wasn't aware of that okay well that's my second response is yes they did so during closing um they they were explicit about it so at 6 er 12 77 um they they were trying to show that there was an agreement for the conspiracy and they go through the um the evidence and then say well this is consistent with what special agent carrie landau testified to she testified that when there is a male sex trafficker and a female sex trafficker working together one's named daddy one's named queen and they have a victim that's the behavior that's the profile evidence that of a female sex trafficker and they're arguing that she's guilty because miss washington's behavior matched up with what agent landau had testified to well that's then again at six yards that was the part of my question that i was interested in did they say she was guilty because of that they didn't use the specific phrase she's guilty because but i mean that was their implication is this is these are the elements of the offense here's the evidence came in it it's consistent with what agent landau testified to i mean i don't know what else they were arguing if it wasn't that she was guilty i guess she matched up with things to me that this is a classic case that needs expert testimony a lot like some of the gang cases in prison where you have to have someone explain exactly how these cultures work and there are certain rules that go along with it and um that because jurors don't you know the average juror doesn't understand what goes on in sex trafficking and so understanding what they mean by this and how what are the rules of you know how does it go and and strangely and not so strangely the trial lawyer representing miss washington did not object to this in front of the trial court because i think it is very typically the kind of explanation that would come in so you have to overcome plain error right we do your honor so why don't you give me your best argument that despite other evidence against uh miss washington the outcome would have been different had the trial court cabined the use of the special agent and what do you have that shows that it's plain error i will so i'll address the substantial rice palm first and then i do want to get back to your honor's first point about uh whether it was necessary or whether it was proper to get in this type of testimony in the first place whether this was like the complex case that we get in this type of profile testimony in the first place whether it's like a drug drug drug case um but first in terms of the substantial rights problem of plain error and why it affected it so as i went through in the briefs se had substantial credibility problems she had lied all over the place before trial the government was forced to admit that during its opening statement you know she had lied about where she had met jimmy where she had met miss washington up until the week before trial she had told one story about where she had met miss washington and then whenever it turned out that her stepsister was going to contradict that she changed her story and the jury knew all of that right they knew all of that they knew all of that correct and miss washington had credibility problems as well and so i think that the the impact of agent landau's testimony was the jury thought we don't really know who to believe which which one of these parties to believe we're going to go with this expert she is an 18-year veteran of the fbi she has worked 135 of these cases and she has told us this is what a female sex trafficker looks like this is how they behave here are all of the criteria that i as a law enforcement expert look for what it is she's where they i saw somewhere that she had not reviewed the facts of this case is that was is that in the record or somewhere if she says that in her testimony that she had not reserved that she had not reviewed these facts which is common when there's profile testimony admitted do you have any evidence to the contrary no but i don't think that's dispositive all she did was testify about this is what i as a law enforcement officer think is the profile of a female sex trafficker you know they recruited a fast food restaurant they have a legitimate job with flexible hours they're named queen they work with someone named daddy so she lays all this out at the very beginning of the government's case and gives a sort of checklist and then as the evidence comes in the jury's thinking oh oh miss washington's name nickname is queen check her ex-husband's name is daddy check she met as the jack-in-the-box check and they're going down the checklist and instead of the jury thinking does the government's evidence match the elements of the offense beyond a reasonable doubt the jury's oh the evidence matches agent landau's law enforcement profile of a female sex trafficker well and there's cross-examination okay and if is you can cross-examine you can cross-examine someone and say is daddy what they're frequently called is queen what they're frequently called any of those they're not and if that's the case or if they say well no not always sometimes or you have some other name or something like that you've got an opportunity to cross-examine on that but it's almost like it's almost like there's a business model for sex trafficking which the average juror would not be aware of and so they have that testimony to consider for whatever it's worth to understand and i think that goes to my my second point that i wanted to make is whether it was plein air in the first place to allow this type of mo testimony to be admissible in the first place the government has argued it is but what this court said in wells and louis is this type of mo testimony is proper it's a close question the court said but it's it's proper in these complex conspiracy cases this was not a complex case for the jury to understand but isn't it it was isn't it common to have this kind of all they all and they and furthermore the reason the reasons given for it being allowed is to establish the background how the how the business is run what the business model is and and credibility and you're you seem to be arguing that it it shouldn't be that shouldn't be it shouldn't be allowed for it to assess credibility and that seems inconsistent with the cases i've read well what brown and taylor say is that the pimp prostitute relationship is not within the common knowledge of the jury and so it may be permissible to have an expert testify about that relationship to shed some light as your honor is saying on the credibility of the victim and so perhaps it was permissible for agent landau to testify that prostitutes you know may lie to protect their trafficker or they may stay with a pimp even though they're being abused perhaps that was permissible but that agent landau did not constrain her testimony to that she went beyond that and talked again about the common behaviors of a female sex trafficker and those that that testimony about the common nickname and recruiting a second prostitute to work with the fourth first all of those things had nothing to do with the relationship between a pimp and a prostitute that the jury needed to understand to under to comprehend the credibility issues of se would you going back to judge judge callahan's question earlier would you agree that the the facts necessary to um for the jury to return a guilty verdict were provided by other witnesses especially se i i i mean i have read her her testimony several times and i really can't make heads or tails of it i she doesn't remember she just consistently says on the stand i don't remember i don't recall i don't remember i don't recall what about any other evidence so when we're doing the plain error analysis it's not just a credibility battle between se and the defendant there's also cell site data and agents testifying as to the movements of the defendant's cell phone and daddy's cell phone and se cell phone which all corroborated se's testimony so it's it seems that which suggests this isn't just a plain creditability battle there was actual other evidence in support of the government's case so how does how do we find plain error there well because i think miss washington had um an explanation for why she was in the places that that cell site location data you know placed her in she gave an explanation for you know she was trying to reconcile with jimmy all of these there were a few places where her testimony didn't match up and that's why i think the jury probably threw out both of miss washington's and se's testimony and went with what agent landau had told them as the expert but most of miss washington's testimony trapped what was the jury what was the jury instructed as to how to look at landau's given um i don't have the because you're saying well they probably just threw it out and looked at it i know that there's some there's an instruction as to expert witnesses and it's not if you find that their conclusions are not supported then you you're free to disregard the entirety or part of it and it wasn't offered and there's no did any was it it was it where can you point to me where they were instructed that that was uh how they were to look at that i apologize your honor i'm saying they threw out se and miss washington's testimony because they both had they were both problematic not that they threw out we don't know that we don't know that we know how they were instructed we know that there was a credibility issue and i would say if there's something i could conclude from it they didn't believe your client um that obviously if if they had believed your client regardless of what the experts said if they had believed her the instructions they were given they couldn't convict her and i mean i think that to convict her they also had to believe se unless they went completely with agent landau because the government thinks that the government claims that it was all about the sell side data and all of that but se was the one who tied all of that together and provided this coherent story so i mean she was central to their case all right i think what happened i guess what would you concede you you can't make a sufficiency of the evidence claim here you haven't no okay i i can see that your honor i wanted to get to the trivializing the burden of proof so um i know i only have three minutes so if i could quickly just get to that unless your honors have more questions about this issue no go ahead okay um in in the closing argument the government trivialized the burden of proof when they told the jury that its obligation was to ask um the same questions that miss washington had asked and um and then reached the same conclusion that this court in alaska said that the jury has a major and meticulous undertaking um to determine guilt and that that's a solemn task they have to reach a state of near certitude about guilt and the government equated that task that the jury has to undertake with miss sort of gut reaction when she was confronted with the evidence that jimmy was in hotels with young girls and she just sort of thought something doesn't seem right here he must be pimping them and the government equated those two decisions those two reasoning processes and and came and told the jury you need to reach the same conclusion you have the obligation to to ask the same questions and that evidence was enough for miss washington and it should be enough for you and equating those two was similar to what the government did in alaska's and that trivialized the burden of proof but in alaska didn't the government provide an incorrect definition of the burden of proof of beyond a reasonable doubt several times throughout the closing argument so it was an explicit statement of how the jurors should define and apply the burden of the government did not define the burden of proof and it was defined elsewhere multiple multiple times throughout the arguments and by the court well it did but but in additionally in alaska that was one moment i think as your honor noted one moment in a 35 one minute in a 35 minute closing argument and the prosecutor also correctly defined and even had a slide up of the correct definition of beyond a reasonable doubt but it was that was the explicit argument was this is another way to define beyond a reasonable doubt that was the erroneous argument of alaska's but here i think they were analogizing the two it was at the very end and it was sort of it was akin to the government's argument that they commonly make of you don't check your common sense at the door this is sort of the human argument the end put aside these legal arguments that everyone has made and let's just kind of think about this as people miss washington made that had that thought process and she thought jimmy was was pimping you should make the same one here that was enough for her these two simple questions it should be enough for you go with your gut make the same decision here and that is not the major meticulous undertaking that they were supposed to undertake here i'll reserve my 13 seconds okay i'll give you two minutes for rebuttal let me let me make sure that my colleagues don't have any questions right here okay we don't so i'll give you two minutes for rebuttal thank you thank you your honor okay uh good morning we're ready for the government so if you would please state your name and your appearance for the record good morning your honor and may it please the court robert elman for the united states regarding agent landau's testimony the defendant has not offered a single case in which a court has disapproved of this type of testimony under circumstances of this nature there are a myriad of cases that expressly approve of this type of expert testimony in sex trafficking cases for the reasons it was offered here to explain the relationships between pimps and prostitutes the jargon that they use the modus operandi and several of those cases that approve it actually involve agent landau testifying in much the same manner that she did here i believe the taylor case is dispositive on that point your honor and taylor follows the louis case by about 10 years so clearly this is admissible under 702 not only in this court but in other circuits and we offered williams which is the seventh circuit case because it expressly points out that this is not some type of inadmissible character evidence and i want to be uh is this the type of thing that is do you i i realize you're citing precedent for the fact is there does there is there a need to publish in this area about what exactly is is admissible in these sex trafficking cases i think your your your your counsel on the other side basically said that um there's you know there's this isn't very complicated so it's not like the gang cases it's not like the conspiracy cases it's it's not very complicated that we don't need an expert to tell a jury what goes on in this underworld of sex trafficking well i believe the court already has published and that case is taylor and it says that even now the typical juror does not understand the modus operandi of sex trafficking and so it's admissible for that purpose and that's really what what the published cases in other circuits say as well but the ninth circuit's already in line there's no split of authority and there's no authority i'm aware of that would limit this type of testimony to complex cases it's simply a matter under rule 702 of whether this type of testimony assists the juror in assessing the veracity of of witnesses so i believe that the task has already been completed why is why does it assist the jurors here because agent landau's testimony was seemed to be about pretty straightforward and simple matters so it wasn't about some sort of complex transactions or conspiracies she talked about using nicknames and and taking the victim to a location where they didn't have support taking them to another location so that they'd be more vulnerable none of those seem like concepts that are more difficult for a juror to understand well i'm not suggesting that they're difficult concepts your honor but they are within someone's specialized knowledge which agent landau has perhaps the best example of that is the fact that jimmy washington and the defendant directed these this 15 year old girl to refer to them as daddy and queen those terms have specialized meaning within the context of sex trafficking the defendant says even now that these are simply innocuous or innocent nicknames that's at page 10 of the reply brief that's not the case in sex that but for agent landau's explanation and to be very clear agent landau did not attempt to interpret any of these acts for the jury and she knew nothing about the case she knew nothing about the defendant she certainly did not attempt to testify that some aspect of her character predisposed her to sex trafficking so how do you distinguish lou i i would think that this case is not particularly similar to wells which involved the murder and actual testimony that was more akin to character evidence and then suggesting that the defendant had these characteristics and so must have committed the murders but lou was drug trafficking and involved what ivy was sort of similar testimony using hard bottom suitcases etc the means of trafficking the drugs and how is this case distinguishable from lou i think it's distinguishable in at least three ways your honor um first lou doesn't just to be clear lou doesn't preclude drug courier profile testimony under rule 702 it's not categorically prohibited the and that brings me to the second point that the type of evidence precluded under louis and similar cases is a drug courier profile that includes facts that are so general that they sweep in a large number of innocent people and because of that the testimony has little or no probative value that's what the louis court stated on page 848 and they gave two examples one of which you've alluded to your honor the idea that people who carry hard-sided luggage are are part of a drug courier profile and another one is people visiting the united states come here and they say that they're here to either visit relatives or conduct business those were suspicious parts of a profile under the drug courier profile testimony that is now prohibited um the testimony here and i'll go back to my example um asking or excuse me instructing the victims to call jimmy washington daddy and to call demisio washington queen have highly specialized meaning in the world of sex trafficking those are not random or innocent or innocuous innocuous nicknames okay those are and neither is the uh name secret or blessing which were assigned by jimmy washington the defendant the two victims in this case so they're distinguishable in that regard so how's the um that um you know counsel for miss washington basically said that her client and and se had credibility issues so what the jury must have done is just throw out their testimony and believe agent landau um how was the jury instructed in terms of looking at expert testimony your honor i i confess that i haven't looked at that instruction in preparation for today i'm happy to supplement with the specific with the reference to the specific instruction if you like i know that they're in the excerpts of record but i agree with your comment earlier that it is mere speculation that the jury decided to throw out the testimony of se and demisio washington because both had credibility problems this is not a she said she said scenario demisio washington's testimony as the trial judge observed was deliberately deceitful um the court said it was a willful intent to deceive and mislead the jury into believing that she was an innocent bystander in all of this it's implausible there is a great deal of smoking gun evidence that we didn't even mention in the answering brief for example the defendant said that she was never in lubbock texas that she was diverted and drove from dallas to hobbs but her cell phone is in lubbock in the same place that that jimmy washington's cell phone was located for 45 to 90 minutes she also says that she was only in odessa long enough to confront the defendant but her cell phone was at the motel that jimmy washington was at for two hours including the time period when the two victims were being photographed so there's corroboration for se's version of events there's no corroboration for the defendant's version of events and they are inherently implausible well aren't there also um photos of the alleged victims on uh the defendant's cell phone but she claims that her that daddy or jimmy put them up there but they're on her cell phone is that correct i i think that's correct your honor and the and after she rented the room jimmy washington showed up with the victim she purports to have been angered by that and to have slept in her car while leaving her phone in the motel room and that's her explanation for why that happened there's no such explanation for odessa but uh are these are these uh sexually explicit photos of secret and blessing on her phone i i there is one piece of testimony that indicates that and uh and there's a reference to it in the in the pre-sentence investigation report but i don't know if the testimony uh states that expressly and the problem we had evident in an evidentiary sense is that both the defendant and jimmy washington disposed of their phones days after this so they couldn't be examined by forensics okay so what particular facts as to miss washington justify the imposition of a lifetime of supervised release he's doing a lot of years right essentially is she doing what 75 years or she's doing 18 years your honor 18 which was a downward departure from the 30 year sentence in the guidelines so it's quite a bit less um there are let's see i have seven seven reasons outlined uh here and again there was no objection to supervised lifetime supervised release below and again this is an instance where the defendant has not identified a single case where lifetime supervised release for a sex offense was held to be substantively unreasonable by a reviewing court so neither you or um miss hughes were trial counsel is that correct that's for uh prosecuting this would have been an ausa and defending miss hughes miss washington was a public defender or who was i believe it uh i believe it was a cja counsel there were two defendants originally jimmy washington pled but there it was tried by two a usas all right but and and and you then uh miss washington had uh a criminal he had a cja lawyer your honor a cja yes okay thank you so all of this stuff that we're arguing about here was not objected to at the trial level that's correct okay so what about the closing argument and the defendant's argument that the government's argument diluted the burden of proof by suggesting something different or less than finding beyond a reasonable doubt how do you respond to that well uh first the no prosecutor said it should be enough for you that demisio washington found believed that jimmy washington was pimping based on the same sorts of evidence um again this is not a comment that drew an objection at the time or prompted the court to intervene but what the defendant's arguing is wrong that the government did not conflate the defendant's informal thought process with the reasonable doubt standard in the argument the prosecutor told the jury that if you look at the evidence and that's a quote you will reach the same conclusion that demisio washington reached about jimmy washington and that's fair commentary that there's nothing improper about that argument you know as i recall the um the prosecutor repeatedly referred to the beyond reasonable doubt standard uh that's correct your honor i think we and i assume the court correctly gave that instruction that is correct your honor and i would also add the prosecutor walked through every element of every offense in great detail with the jury but they were instructed thoroughly and correctly on reasonable doubt one more question you said that there are no cases finding fault with the lifetime supervised release in this category of cases yes but isn't this one different in that the judge stated that he didn't believe that she would commit uh that i don't think it's different your honor and there was a catalog of reasons why a lifetime supervised release was appropriate and it was briefed thoroughly and the prosecutor also uh articulated additional factors at sentencing so the record's pretty fulsome on this and again i can recite them but they're in the briefing so what about um there was there's about that the defendant was a mother and that's supposed to was supposed to be an emotional to try to pull on the heartstrings or something i i'm not really sure um i know that the miss washington admitted herself that she was a mother so i'm not i'm not really that argument isn't totally clear to me so well i'm not suggesting it's totally clear to me but i think you have the context for it it makes more sense the defendant had intended to introduce a photograph of her daughter at trial and the government objected on the ground that that was being offered to raise the emotional appeal of the defendant to the jury the court agreed and the photograph didn't come in but after the government put on overwhelming evidence of from dallas to odessa to the motel where jimmy washington was and in response to that she blurted out and i quote so july my daughter she went to college so she threw the cat out of the bag and the government had no ability to object to that she then went back about half a dozen times and reintroduced the fact that she had a daughter and that her daughter was in college so in its argument uh in order to write the scale which is the term the supreme court uses in the young case which is at page 46 of our brief the prosecutor responded i think to challenge the defendant's uh unfair appeal to sympathy and that in that context it's appropriate because it was the defendant who opened the door to that in the first place i don't think a prosecutor has to stand silently when that happens let me find out if my colleagues have any additional questions we do not so that you're slightly over so um but i'm since i'm giving the uh counsel for appellant additional time it'll end up about about even as even as as a mother can be two or two children here so that's the uh so we'll go back for a rebuttal you have two minutes thank you your honor um i wanted to i looked at taylor while um government council was talking and taylor specifically let in the expert testimony um to explain why a person in the victim's position might not have testified truthfully in previous proceedings about her relationship with her pimp so it wasn't about the expert testimony about the behaviors and it wasn't about her testimony to explain why the victim might have a certain type of relationship with her pimp and why that might have influenced her testimony on a particular on the previous occasion that's not the same thing that occurred here with agent landau what occurred here was similar to louis in louis it was more than what what government council said it was that drug couriers also use pagers they also create itineraries of multiple stops they use the excuse of visiting relatives or conducting business in the u.s they use false bottom suitcases they use hard-sided suitcases so these are all typical behaviors not personality characteristics but typical behaviors of a drug courier and i know that this testimony has not come up before in sex trafficking cases but in wells the court does look at other jurisdictions and say that in pedophile cases they call it which i think would apply here this testimony has been prohibited for the same reasons that we're arguing here under 403 it should be kept out it's not relevant and all those reasons hold up and so it's not just that it should be prohibited in drug courier cases it's just that that's what has most commonly come up um oh i forgot my third point i looked up your honors um question about the expert uh jury instruction and it's at 7 er 1370 um in case your honor wants to take a look at it uh judge callahan it does say you may accept or reject it give it as much weight as you think it deserves considering the witness's education experience so unless your honors have any other further questions i'll submit we don't appear to thank you both for your helpful argument in this matter this case will stand submitted thank you your honor thank you your honors thank you
judges: CALLAHAN, BADE, Antoon